# REPORTS.

## STATE v. MORSE.

The laying out of a highway by the selectmen of a town without an application for it, is invalid.

The provision of the Revised Statutes, ch. 53, § 7, that no highway not laid out agreeably to statute law shall be deemed a public highway, unless the same has been used by the public for twenty years, operates to discontinue all highways not so used, and depending upon dedication, even when used long enough to become public highways under the former laws.

The jury cannot rightfully presume that a highway has been laid out agreeably to statute law, from the mere use of it by the public for any period less than twenty years.

Proof that part of an entire highway, the laying out of which was defective, has been used by the public for the term of twenty years, is evidence of a legal highway as to the part so used, although no distinct act of acceptance by the town be shown.

Where the record of a laying out of a highway is defective in failing to show a particular statute requisite, but enough is shown to render it probable that all the requisites had been complied with, and at the same time the record is so ancient as to afford a presumption that by the death of the actors it could not be amended, then a jury, on such evidence, aided by the fact that the highway had been opened by the town and used for many years, though less than twenty, would be justified in finding the highway to have been legally laid out.

So long as a highway once established is kept open and fenced out, and the public never excluded, but it has always been used as a public highway by the land owners for access to their farms and for other farming purposes, the right of the public will not be deemed to be lost by abandonment.

When a road is established by use alone, it is not necessarily limited to
the travelled track and the ditches on each side, but a jury would be
at liberty to find that the easement extended over the whole space
marked by fences which had been maintained more than twenty years,
and which gave about the usual width of a highway.

INDICTMENT against Joseph B. Morse for obstructing a public high-
way. The following case is agreed upon for the purpose of raising
questions of law. A copy of the record of the laying out of the high-
way in question marked " A " is annexed and made a part of the case.
No petition for said laying out is on record, and there is no evidence
of the existence of any such petition. At the time of the laying out,
and for several but less than twenty years afterwards, and until several
years after the building of a bridge across Connecticut river between
the villages of Hanover and Norwich, Vt., in 1796, said highway was
much used as a public road, especially between Hanover and Norwich
and Thetford, Vt., it being the rope ferry road so called, connecting
the college plain at Hanover with the rope ferry then in use across
Connecticut river between Hanover and Norwich, from one to two miles
northerly of the site of said bridge. From the southerly terminus, at
a point on the college plain, for a distance of about forty rods northerly
to a point where it is joined at right angles by a cross street which
was laid out at the same time and in the same manner, and has been
used ever since, connecting with the main road northerly to Lyme, the
road in question has always been used and kept in repair as a public
highway. The part of said road beyond said point of junction with
the cross street, including the part on which the defendant resides,
and upon which the alleged obstructions are, the defendant claims to
have been abandoned and disused as a public highway ever since the
erection of said bridge across Connecticut river, and the discontinuance
of said ferry boat; but this is denied by the State. Said road, from
said point of junction to rope ferry, the northern terminus, has been
very little used since the building of said bridge, in consequence of the
diversion of the public travel caused thereby, the removal of the ferry
boat, and the low rate of tolls over said bridge, as fixed for the inhab-
itants of Hanover and Norwich. About the year 1811, the owners of
lands adjoining the road erected across the same a fence about five
feet high, including a pair of bars, about a mile from the southerly
terminus, and about three fourths of a mile from the northerly terminus
(rope ferry), in order to avoid the expense of maintaining fences on
the road, prevent the egress by said road of cattle from the neighbor-
ing fields, and to prevent the travel beyond that point of teams and
travellers who would occasionally pass that way northerly from the col-
lege plain under the impression that it was the public road leading to
Lyme village, and would have to retrace their way. Said fence, with
the bars, has been kept there ever since. Since the erection of said
fence, the road beyond it has not been used except by occasional foot
passengers going to and from rope ferry, so called, and by persons

and teams passing to and from the fields northerly of the fence for farming purposes; nor has it been graded or repaired, nor have fences been erected by its sides.    Between the cross fence and the ferry the way is a foot-path, sometimes varying and uncertain as to its locality, and in places diverging from the limits of the original laying out. Between said cross fence and said point of junction of the roads are now seven dwelling-houses, including that of the defendant, erected at different times, most, but not all of them, within twenty years next before the indictment.    Between the point of junction and the southerly terminus are now seven or eight dwellings, an academy building, and a vestry; some of which have been erected more than fifty years, and most of them more than thirty years before the indictment.    To all these buildings on, both portions of the road the owners and occupants have had no means of access except by the road in question. The lands through which said road passes northerly of said point of junction have been, ever since the laying out, owned in separate lots by a number of persons who have always maintained a fence on each side of said road as far northerly as said bars, and have always used the same for the purpose of driving cattle to pasture, for carting agricultural products and manure &c., and for all other purposes for which they have had occasion.    The defendant claims that the fence on the easterly side of the road opposite his premises has been moved by the owners of the land a number of feet to the westward within twenty years next before the indictment, and that said fence in that part has never stood in the same place twenty years together at any one time : which is denied by the State, and the State objects that the fact would not be material if it were so.    The defendant claims and offers to prove that for a period of more than twenty years next after the building of the bridge in 1796, there was no dwelling-house or other building on the road northerly of said point of junction.    This the State denies, and objects that the fact is not material.    There never was any dwelling or other building on this road northerly of the cross fence. The State claims and offers to prove that said road has been, occasionally and whenever necessary, repaired by the town by and beyond the defendant's dwelling-house, as far as the most northerly house thereon, and has been kept in repair by the town and highway surveyor in the same way as other roads have been.    This the defendant denies, and offers to prove that no repairs have been made on said road from said point of junction to said cross fence, except by persons dwelling thereon, acting on their own account and at their own expense.    Defendant's dwelling-house, including the place of the alleged obstructions, is on said road between the point of junction and the cross fence, about one fourth of a mile northerly of the southerly terminus, and was built in 1840.    On the opposite side of the road is a bakery built about 1850, and northerly of said bakery are two dwelling-houses, one built about 1840, and the other about 1850.    The defendant holds under a deed from Phineas Clement, dated March 1, 1865, wherein he is bounded "on the east by the rope ferry road, so called."    In 1867, the defendant removed the old door-yard fence directly in front

of his house, and built a new one several feet nearer to the travelled track of the road; which is the obstruction complained of. Said fence so built by the defendant is about ten feet from the travelled track of the road at the nearest point, and about twenty-five feet at the farthest point, averaging a distance of about thirteen feet. Said old fence had stood in the place whence the defendant removed it more than fifty years ; and so far as known, was built there when the road was first laid out and made. The road, at the point of the obstruction, was, before the removal of the fence by the defendant, of a somewhat less width than that set forth in the record of the original laying out. It appears by the town records that at the annual town meeting in Hanover, March 11, 1794, Samuel Slade, Ebenezer Brewster, and Joseph Curtis were chosen selectmen. It was also agreed that the foregoing case shall be discharged, if either party shall so elect, for the purpose of trying any matter of fact by the jury.

> A. P. CARPENTER, solicitor for the state.
> H. HIBBARD, for defendant.

It was ordered, that this case be reserved to the next law term for the consideration of the whole Court.

## " A."

### HIGHWAY No. 5.

HANOVER, Feb'y 14th, 1795.

Gen. Ebenezer & Joseph Curtis two of the selectmen of said Hanover laid out a road or highway from the rope ferry so called to the north west corner of the college green laying the following line for the middle of said highway viz beginning at high water-mark where the road now is thence running north seventy five degrees east seven rods then south forty degrees east nineteen rods—thence south twelve degrees east nineteen rods—thence south twenty five degrees west twenty eight rods—thence south thirty seven degrees west, forty rods—thence south twenty five degrees west twenty two rods—thence south four degrees east thirty seven rods, to the northerly line of the second hundred acre lot belonging to the original right of Noah Jones at the north-westerly boundary of land belonging to the wife of Bezaleel Woodward Esq'r., thence south forty degrees west one hundred and ninety rods on the westerly line of land belonging to said Woodwards wife— thence south by a meridian line as the road now lies fifty two rods to the northwest part of the college green, the highway to be four rods wide on the last line & three rods wide on the other lines—surveyed by B. Woodward.

### No. 6.

We also at the same time laid out a highway from the highway at the front of Deacon John Paines house westerly to said rope ferry road the distance from road to road being about twenty two rods the northerly line of said road being the southerly line of Deacon Benoni

Dewey's house lot and the southerly line of a lot conveyed by Bezaleel Woodward to Josiah Dunham said road to be three rods wide.

Surveyed by B. Woodward.

There is no compensation to be given for the above last mentioned road as pr. agreement.

SAMUEL SLADE, } *Selectmen.*
JOSEPH CURTIS, }

A true copy, from the records in the office of the town clerk of Hanover.          Attest,   O. S. INGALLS, *town clerk of Hanover.*

From                    C. A. DOLE, *Clerk.*

*Carpenter*, for the State.

I. Upon the facts stated in the case, it would be the duty of a jury to find the highway in question duly and legally laid out. *Pritchard* v. *Atkinson*, 3 N. H. 338–9 ; *State* v. *Alstead*, 18 N. H. 59 ; *Robbins* v. *Bridgewater*, 6 N. H. 527 ; *Hayward* v. *Bath*, 38 N. H. 179.

II. The case discloses no evidence upon which it would be competent for a jury to find that any part of the highway southerly of the cross fence has been abandoned or discontinued, however it may be with the part northerly of said fence. *State* v. *Alstead*, 18 N. H. 60 ; *Webber* v. *Chapman*, 42 N. H. 326.

*H. Hibbard*, for respondent.

There having been no petition for the road in question, nor oath taken by the selectmen, nor notice to the town, nor finding that the road was required for the public accommodation, nor any compensation for the land damages, the laying out was illegal. The record is no evidence of a valid laying out, but the contrary. Statute of 1791, "for laying out highways ;" *Pritchard* v. *Atkinson*, 3 N. H. 335 ; *Wiggin* v. *Exeter*, 13 N. H. 304 ; *Haywood* v. *Charlestown*, 34 N. H. 23 ; *Commonwealth* v. *Coombs*, 2 Mass. 489 ; *Commonwealth* v. *Cummings*, 2 Mass. 171 ; *Lancaster* v. *Pope*, 1 Mass. 86 ; *Commonwealth* v. *Egremont*, 6 Mass. 491 ; *Commonwealth* v. *Swain*, 6 Pick. 547. The proceeding is irregular and invalid in this also, that it appears by the return that the road was laid out by Ebenezer Brewster and Joseph Curtis, two of the selectmen, while the return is signed by Samuel Slade and Joseph Curtis as selectmen, and not by Ebenezer Brewster. The defects here appearing do not come within the principle of any of the cases where deficiencies have been supplied by presumptions arising from lapse of time. They are of such a nature as to be incompatible with the original existence of a correct laying out. The result is that there can be no road in any part of the route unless by prescription ; and there is no evidence which shows or tends to show a highway at the place of the alleged obstruction. On the contrary, the case does show an abandonment of the part of the road northerly of

the junction of this with the cross road, including the place in contro-
versy.  *State* v. *Alstead*, 18 N. H. 59.  If there is any road here, it
having been created solely by long continued use, the easement is
only of so much as the public has actually used.  It can cover only
the travelled part of the way, and the space needed for the proper en-
joyment of that part.  In this case, the alleged obstruction (the door-
yard fence) is about ten feet from the travelled track at the nearest
point, averaging a distance of about thirteen feet.  It does not ob-
struct at all the travelled track, nor the travel.  It is not the law that a
road by prescription covers all the space between the fences on the two
sides of the travelled track, if there are such fences.  *Harlow* v. *Hum-
iston*, 6 Cow. 189.  Such a claim would have no definiteness or limit.
There has been no fence anywhere on one side of the track which had
stood twenty years before the indictment.  The space between the
track and the fence cannot be covered by the easement on one side of
the road, while on the opposite side it is not so covered.

BELLOWS, C. J.  The first question is, whether at the point in ques-
tion a legal highway is shown to have been established.

The State offers the record of the laying out of such highway by a
majority of the selectmen, February 4th, 1795, but produces no record
or other direct evidence of an application for such highway.  Without
such application, it is well settled that the selectmen have no jurisdic-
tion to lay out a road.  *Pritchard* v. *Atkinson*, 3 N. H. 335 ; *Haywood*
v. *Charlestown*, 34 N. H. 23 ; *Clement* v. *Burns*, 43 N. H. 613.

But it is urged for the State that it is competent for the jury, after
this lapse of time and upon the evidence of user, to presume that the
highway was duly and legally laid out.  The laying out was February
14, 1795, and had the road been used ever since as a public highway,
it would have been competent for the jury to presume that all the pro-
ceedings were regular and valid.  And so it would have been had the
user continued twenty years.  From the case it appears that at the
time of the laying out, and for several years after the building of a
bridge across the Connecticut river, the highway was much used as a
public road between the villages of Hanover and Norwich and Thet-
ford, Vermont, it being the rope ferry road, so called, connecting the
college plain with the rope ferry, then in use across the said river.
From the southerly terminus at the college plain to a point where it
is joined at right angles by a cross street about forty rods distant,
this road has always been used and kept in repair as a public highway.

From this point at cross street to rope ferry, the northern terminus,
the road has been very little used since the building of the bridge in
1796 and the removal of the ferry boat ; and in 1811 the land owners
erected a fence across the road, about one mile from the southerly
terminus, and about three fourths of a mile from the northerly ter-
minus, rope ferry, to save the expense of fencing the road, and to
prevent travellers going upon that part of the road under the impres-
sion that it was the road to Lyme, and said fence and bars have ever
since been kept up ; and since its erection the road beyond has been

used only by occasional foot passengers going to and from rope ferry, and by persons and teams passing to and from the fields northerly of the fence for farming purposes; nor has it been graded or repaired or fenced, and the way is a foot-path, and varying and uncertain as to its locality, and in places diverging from the limits of the original laying out.

Between the cross fence and the cross street, a distance of nearly one mile, are now seven dwelling-houses, including the defendant's, erected at different times, most, but not all, within twenty years next before the indictment, and between cross street and the southerly terminus there are seven or eight dwellings, an academy building, and vestry, some erected fifty years ago, and most of them more than thirty years since. To all these buildings on both parts of the road there has been no access but by the road in question. The land on this road, between the cross street and the bars, has been owned by a number of persons in separate lots, and they have always maintained fences on each side of the road, and have used the road for driving cattle to pasture, for carting agricultural products and manure &c., and for other purposes for which they have had occasion.

The obstruction complained of is a fence in front of defendant's house, the house being between the cross street and the bars, and about one fourth of a mile from the southerly terminus of this road. In 1867 the defendant removed the old door-yard fence in front of his house and built several feet nearer the travelled track of the road, and this is the obstruction complained of. The old fence had stood there more than fifty years, and was built there when the road was first laid out and made.

In respect to that part of the highway northerly of the cross fence, it is not material to consider the evidence as to the use. The inquiry is as to the portion south of that fence, and particularly at the point of the alleged obstruction.

As the record of the laying out of this way is imperfect, it becomes necessary to consider whether the evidence of user is sufficient to authorize the finding of a legal highway at the point in question. By ch. 53, sec. 7, of the Revised Statutes, it is provided that " No highway that has not been laid out agreeably to statute law shall be deemed a public highway, unless the same has been used by the public for a term of time not less than twenty years." These provisions are substantially re-enacted in the Gen. Statutes, ch. 68, sec. 8; so that it is not material to consider which is to govern this case.

It is urged by the prosecutor that there is evidence on which a jury might find a use by the public, for a term of twenty years, of the road in question. If that be so, and a jury should so find, it would be conclusive evidence of the existence of a legal highway, unless it has since been discontinued. *Wallace* v. *Fletcher*, 30 N. H. 434; *Stevens* v. *Nashua*, 46 N. H. 198.

It is also urged that there is evidence from which a jury might legally find that the highway was laid out agreeably to statute law; or in other words, that there was a proper application, which has been

lost. To sustain the first position, it is necessary to prove that the way was used by the public for a term not less than twenty years. Before the Revised Statutes, a shorter term was supposed to be sufficient. When a road or bridge was dedicated to the public, and used by them long enough to evince its usefulness, though less than twenty years, it has been held that the town was bound to repair it. *State* v. *Campton,* 2 N. H. 513 ; *Hopkins* v. *Crombie,* 4 N. H. 521 ; *Pritchard* v. *Atkinson,* 3 N. H. 339 ; and see *Stevens* v. *Nashua,* 46 N. H. 199, and cases cited. But now by the Revised Statutes, re-enacted in the General Statutes, the time for such use is fixed at twenty years, and nothing short of that will be sufficient to establish a public highway ; and although there may have been prior to the Revised Statutes such use of a way as, under the law then existing, to make it a public highway, yet under the present law it cannot be deemed a public highway unless laid out agreeably to statute law.

The consequence is that this provision of the Revised Statutes operated to discontinue all highways which were established by dedication or prescription merely, and had not been used for a period of twenty years, and so it is expressly decided in *State* v. *Atherton,* 16 N. H. 213 ; where the law is carefully considered and the opinion given by Parker, C. J., who says : " The legislature have power to discontinue highways ; and the seventh section of ch. 53, which has been cited, must operate as a discontinuance of all highways by dedication which have not been used by the public for the term of twenty years. They shall not be deemed public highways. There is then an end of them as such. Its operation upon this case is the same that must have resulted from any other discontinuance of the way."

The effect of this law, then, would seem to be similar to the law abolishing the settlements of paupers, gained under laws passed prior to certain dates. In both cases the interests affected are public in their nature. No private rights are violated, and of course there can be no constitutional objection to them. The object of the provision in question was to relieve this branch of the law from the embarrassments existing under the old law, by substituting a definite and simple rule for one that was uncertain and perplexing, and the language of the act very clearly applies to ways then existing ; and we can perceive no sound objection to the construction given to the law in *State* v. *Atherton,* namely, that it operates to discontinue all existing highways not laid out agreeably to statute law, and not used twenty years. The case of *Haywood* v. *Charlestown,* 34 N. H. 23, confirms strongly the doctrine of *State* v. *Atherton.* It was case for an injury from an alleged defect in a highway, which happened in September, 1853. The way was laid out by the selectmen in 1835, but there was no record or other evidence of a written application. The plaintiff offered to prove that the road was made and opened by the town, and had been used ever since ; but the Court ruled that the jury could not rightfully presume the existence of the highway until it had been used twenty years, and this ruling was sustained by the whole Court, holding that the provision of the Revised Statutes is conclusive against the position taken by the

plaintiff's counsel on the trial, that the jury might presume the highway to have been legally laid out, from the length of time it had been wrought by the town and used as a highway by the public. In delivering the opinion of the Court, FOWLER, J., says that it was only seventeen years from the construction of the road to the date of the accident, and no such presumption, by the express words of the statute, could arise in less than twenty years. The position that the jury might presume the highway to have been legally laid out, was only another form of saying that the highway might be deemed a public highway, contrary to the special enactment of the statute, it having been in use less than twenty years. To hold that such a presumption might rightfully be made, would completely nullify the provisions of the statute.

No allusion is made in the opinion to the fact that the road had been in use seven years before the provision in question went into effect, but it is obvious from the opinion that whether the use was before or after the law, was not regarded as material.

The result of this examination is, that proof of the public use of this way, at the point in question, for the term of twenty years, will establish it as a public highway; and that nothing short of that period will be sufficient, even although there had been such use before the Revised Statutes as would have shown a legal highway under the law then existing.

The question then is, whether there has been twenty years' use by the public of that portion of the highway alleged to be obstructed by the defendant. If there has been, the jury would be justified in presuming the highway to be legally established. In determining this question, it is not necessary to show any specific act of acceptance by the town or its officers. It is sufficient to show a use by the public for twenty years. *State* v. *Atherton,* 16 N. H. 203 ; *Stevens* v. *Nashua,* 46 N. H. 192. In respect to that part of the way southerly of the cross fence, we think there is evidence competent to go to the jury to enable them to find a valid and legal highway. Of course, proof that the town has repaired this part of the road would be competent, and, as matter of evidence, would be entitled to much consideration by the jury ; but it would not be decisive as matter of law, neither would the absence of such proof be decisive.

In respect to the other question, we are of the opinion that the public use of the way for any period less than twenty years, cannot be regarded as furnishing a presumption that it was laid out agreeably to the provisions of the statute.

The true construction of this provision of the Revised Statutes is, that no public use of a way for a period less than twenty years shall establish its existence as a public highway, either upon the ground of dedication, prescription, or as affording a presumption of a valid laying out, making twenty years' use to be necessary in all cases where there has not been a valid laying out. This construction is sustained by the case of *State* v. *Atherton,* holding that highways by dedication, not used for twenty years, are discontinued by this law ; and also by

*Haywood* v. *Charlestown*, which holds that, from any use of a way short of twenty years, a jury could not presume a legal laying out. To hold otherwise would be only saying in another form that a way might be deemed a public highway contrary to the express provisions of the statute, and would effectually nullify those provisions; and such is the language of Fowler, J., in *Haywood* v. *Charlestown*.

The truth is, that when the law in question was passed, the courts were not accustomed to any nice discrimination as to the effect of such public use, whether it operated as proof of dedication, a right by prescription, or that the way had been duly laid out; but it was said to be evidence on which a jury might presume an existing legal highway, in *Willey* v. *Portsmouth*, 35 N. H. 311, and the purpose of the law was to determine how long such use should exist to authorize such a presumption. In *Pritchard* v. *Atkinson*, 3 N. H. 338, it was said to be well settled, that from long use highways may be presumed to have been legally laid out. In the case of dedication, a way has been held to become a public highway when it has been used long enough to evince its public usefulness. *State* v. *Campton*, 2 N. H. 513. See also *Stevens* v. *Nashua*, 46 N. H. 199, and cases cited. For these vague and uncertain rules the Revised Statutes substituted a rule which is simple and intelligible, and intended to apply in all the cases. The doctrine of *Haywood* v. *Charlestown* is confirmed in *Northumberland* v. *Atlantic & St. Lawrence Railroad*, 35 N. H. 574, where it is held that since the Revised Statutes no highway will be presumed to have been legally laid out unless it has been used as a highway for at least twenty years; and when the use is less than twenty years, it must be shown that all the statute requirements have been complied with. So is *Smith* v. *Northumberland*, 36 N. H. 38, and in *Hall* v. *Manchester*, 39 N. H. 304, the doctrine of *Haywood* v. *Charlestown* was recognized.

Another aspect of this question is this: Where then there is a record of an actual laying out of the highway, but it is defective in not showing some statute requisition to have been complied with, are the jury at liberty to infer, from the public use of the way for any period less than twenty years, that such requisition was in fact complied with? Where the record is so ancient as to afford a presumption that by the death of the actors it cannot be amended, and what is recorded naturally leads to a belief that the statute requisites have probably been complied with, although some of them are not stated in the record, a jury would be at liberty to find from such record, with proof that the way so recorded was made and opened by the town, and used for many years though less than twenty, that the proceedings had been regular, and the requisitions of the statute complied with.

In *State* v. *Alstead*, 18 N. H. 59, it was decided that the jury might make such inference from a record of forty years' standing; and in laying down this doctrine the Court does not allude to the fact that appeared in the case, that the way had been opened and used by the public for many years; but we think the opinion must have embraced, as one of the elements on which it was founded, this public use; for without such use, we do not understand that such an inference can be

made. On the contrary, if the road has never been opened or used, we think the presumption must rather be that it had not been legally laid out. In this case the record did not show any application; and after the lapse of thirty-nine years, it was held that it might be left to the jury, with proper instructions, to find a compliance with the statute in this respect. In *Pritchard* v. *Atkinson*, 3 N. H. 335, the record of the highway showed no application or award of damages, and the Court, after the lapse of seventeen years, expressed an opinion that when a highway has been made in pursuance of a laying out by selectmen, and has been used for a considerable time as such by the public without interruption, a jury would be warranted in presuming an application and notice, and an adjustment of the damages.

In analogy to this is the doctrine of *Cavis* v. *Robertson*, 9 N. H. 524, and *Northwood* v. *Barrington*, 9 N. H. 369, where it was held that a jury might infer from the record of the choice of an officer, and proof of his having served in the office for one year, that the town meeting at which he was chosen was legally warned. This was after the lapse of about forty years from the date of the record, when it was to be presumed that an amendment of the record could not be made. So an ancient deed may be read, where possession is shown to have accompanied it, without other proof of its execution. *Homer* v. *Cilley*, 14 N. H. 97, 98.

Upon these authorities it is quite clear that before the Revised Statutes the construction of a way laid out by the selectmen, and its public use for a period even less than twenty years, was evidence upon which, in connexion with the record a jury would have been at liberty to find, that in some particular not shown by the record, the statute had in fact been complied with, especially when it appeared that the proceedings were of a date so ancient that an amendment of the record could not be made. The question is, then, whether the admissibility of this evidence has been taken away by the Revised Statutes. It is clear that there may be cases where a defect in the record may be supplied by direct proof, as that an application in writing had been made and was lost, and so proof of its contents adduced. In such a case, and also where the entire record has been lost or destroyed, and there was some evidence of its contents, proof of long public use, though less than twenty years, might properly have great weight, and we are of the opinion that the statute does not render it incompetent. The laws in respect to the statute of limitations and the sales of lands for non-resident taxes, furnish illustrations of this position. The adverse occupation of land may not be of such duration or character as to bar an action, yet it might be received and weighed with other evidence to prove a lost deed. So, when a party sets up a sale of land for taxes, and shows enough of the proceedings to render it not improbable that all the requisites of the statute had been complied with, and also shows that some of the ordinary evidence of the proceedings has probably been lost by time and accident, then long and quiet possession of the land may be left to the jury as evidence of particular facts, the ordinary proof of which cannot be found. This is the doctrine of *Waldron* v. *Tuttle*, 3 N. H. 340.

The question of abandonment it would seem can hardly arise here. If the jury find a legal highway, it must be by finding a public use during a period when the way at the point in question was used as little, to say the least, as at any time since.

Should it hereafter appear that the highway was legally laid out, a question might be made whether there had been such a non-user as to furnish evidence of abandonment. It will be observed, however, that between the cross fence and cross street the way has always been opened and fences maintained by the land owners on both sides, who have used it for driving cattle to pasture, for carting agricultural products, manure, and for other purposes for which they had occasion. Nor is there any evidence that such land owners have resumed the occupation of the land over which the way passes under a claim of right. If then the way has always been kept open, and the public never excluded, but the way has always been used as a public highway by the land owners for access to their farms and for farming purposes, it could hardly be contended that the public right has been lost by abandonment. See Angel on Highways, sec. 323 ; *State* v. *Alstead*, 18 N. H. 59; *Webber* v. *Chapman*, 42 N. H. 326. It is not probable, however, that this question will arise, and if it should, it is to be presumed that the facts bearing upon it will more fully appear.

It is also contended by the defendant, that if the road is established by use alone, the public is limited to so much as it has actually used,— that is, the travelled track and the space needed for the proper enjoyment of that part. But we think this is a question for the jury. The easement is not necessarily limited to the travelled path and the ditches on each side, but where the road has been fenced out for many years about the usual width, and there is nothing to control it, a jury would be justified in finding the whole space between the fences to be a public highway. Angel on Highways, sec. 155, and cases cited. *Rex* v. *Wright*, 3 B. & Adolph. 681 ; *Sprague* v. *Waite*, 17 Pick. 309; and so the law was understood to be in *Willey* v. *Portsmouth*, 35 N. H. 311, 312, and in *Coffin & ux.* v. *Plymouth*, 49 N. H. 173. When the owner of land fences out a suitable space for a highway, and throws it open to the public as such, and it is accepted and used accordingly for twenty or more years, a jury might properly find that the whole space was so dedicated and accepted, although a part of it only was wrought for travel. It is quite obvious that the space between the wrought road and its exterior limits may be needed for various purposes, as for furnishing earth and other materials for making the road, constructing culverts and watercourses, making changes in the travelled path, and avoiding obstructions by snow—*Com.* v. *King*, 13 Met. 118; and for these and other reasons the space given to highways is very generally much more than what is occupied by the travelled path, and there can be no doubt that it is competent for a jury to find, from ancient fences and other circumstances, that the true limits of a highway extend beyond the wrought road.

*If either party elect, the case is discharged.*